(No. 19096.—

LILLIAN B. KNIGHT, Plaintiff in Error, *vs.* CHARLES A. GREGORY *et al.* Defendants in Error.

*Opinion filed February 20, 1929.*

C. R. PATTERSON, and JOHN E. JENNINGS, for plaintiff in error.

COCHRAN & SENTEL, and W. G. COCHRAN, guardian *ad litem*, (GEORGE W. BURTON, of counsel,) for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

James A. Gregory died on October 14, 1927, leaving a will, which was admitted to probate on November 19, 1927, by the second paragraph of which he disposed of all of his property after the payment of his debts and funeral expenses, as follows:

"*Second*—After the payment of such funeral expenses and debts, I direct my estate, both real and personal to be divided into five and one-half shares to be distributed as follows, viz.: to my son, Charles A. Gregory two shares; to my daughter Estella Donovan one share; to my daughter Lillian B. Knight one share, and to my daughter Ginevra F. Wacaser one share and to my grandson Gregory Prichard one-half share. The sale and distribution of my estate after my death to be left entirely to the judgment of my

son, Charles A. Gregory, in whom I have the utmost confidence, both as to his ability and integrity."

The testator nominated his son, Charles A. Gregory, as executor, and letters testamentary were issued to him by the county court of Moultrie county. He owned at his death real estate in Moultrie county, consisting of a farm of about 264 acres, town lots in the village of Lovington, on which he resided, and two acres of vacant land in the same village. His daughter Lillian B. Knight, one of the beneficiaries of the will, filed a bill for the partition of the real estate, claiming that by virtue of the will the beneficiaries named in the second paragraph became seized of the real estate in the following proportions: Charles A. Gregory four-elevenths, Estella Donovan, Ginevra F. Wacaser and Lillian B. Knight each two-elevenths, and Gregory Prichard one-eleventh. The bill alleges that there is sufficient personal property belonging to the testator's estate to pay all his just debts, funeral expenses and costs of administration, and that there will be no necessity to resort to any of the real estate for that purpose. The beneficiaries were all made parties defendant, Charles A. Gregory as executor as well as individually. A demurrer was filed by all the adult beneficiaries and the executor. A guardian *ad litem* was appointed for the grandson, who was a minor, and he joined in the demurrer of the other defendants. The court sustained the demurrers and dismissed the bill for want of equity. The complainant has sued out a writ of error.

It is contended by the plaintiff in error that Charles A. Gregory took no title to the real estate as executor or trustee; that if he took any title his seizin was momentary, only, and the beneficiaries named in the will became the owners of the real estate immediately on the death of the testator, and that if the will gave any title to Charles it created merely a dry or passive trust in him, which the Statute of Uses immediately executed and the beneficiaries thereby

became seized of the estate. It is the contention of the defendants in error that the real and personal property should be sold by the testator's son, Charles, and the proceeds should be distributed among the beneficiaries named in the will, that this was a gift of personalty and not of land, and that the beneficiaries of the will took no interest in the land.

The question essential to be first determined is the intention of the testator, to be ascertained from the language of his will. When his intention is so ascertained it must be carried out if it violates no rule of law. The paragraph to be construed consists of two sentences, the first of which by itself is not open to construction, for, considered alone, it unquestionably devises all the residue of the testator's real estate, after the payment of his debts and funeral expenses, to his three daughters, his son and his grandson in the proportions stated. The estate is directed to be divided, both the real estate and the personal estate, into shares, which are to be distributed, the number of shares indicated, to each person named. No person is directed or authorized in this sentence to make the distribution but the persons named are left to make the division and distribution among themselves, either by voluntary agreement, or, if they can not agree, by such method as the law provides. The testator, however, did not leave this sentence standing alone. It was a part of his will, but it must be construed with reference to the other provisions. It was subject to qualification by the language of the testator used in any part of his will. This sentence says nothing about a sale of the testator's property, but the second sentence of the paragraph provides that the sale and distribution of the testator's estate, after his death, is to be left entirely to the judgment of his son, Charles. These words cannot be disregarded. They must be considered in connection with the other words of the will. Where a fee simple is expressly devised by one clause of a will, if the intention of the testator ascertained by a consideration of the whole will is that the gift should

be other than a fee simple, it is wholly immaterial in what part of the will such intention is manifested. (*Giles* v. *Anslow*, 128 Ill. 187; *Robison* v. *Botkin*, 181 id. 182; *Becker* v. *Becker*, 206 id. 53; *Meins* v. *Meins*, 288 id. 463; *Glass* v. *Johnson*, 297 id. 149; *Buckner* v. *Carr*, 302 id. 378.) To what sale, then, does the testator refer which is to be left to the judgment of his son? Manifestly he expected and intended that in the process of dividing and distributing his estate all his property should be sold, and this declaration in regard to the sale is the expression of his intention that such sale shall be made by his son when and as his judgment shall determine. The plan of the testator for the devolution of his estate was simple. His heirs were a son and three daughters. He wanted to treat them all alike, except that he would give the son a double portion. He had a grandson, the child of one of his daughters, whom he wished to share directly in his estate, and therefore he determined to leave him half as much as a daughter's share. This resulted in his decision that his whole estate should be divided into five and a half parts and distributed, two parts (or four-elevenths) to his son, one part (or two-elevenths) to each daughter, and one part (being one-eleventh) to the grandson. He left no widow for whom he needed to make provision, and therefore it was unnecessary to postpone the division and distribution of the estate. Doubtless it occurred to him that it might be difficult to divide the land without manifest injury to the interest of some of the parties, but if the whole estate were turned into money it could be easily distributed without loss or unfairness to anyone and with little cost. Accordingly he follows the direction for a division and distribution of all his estate, both real and personal, by the further direction how such division and distribution shall be made,—that is, by a sale and distribution to be made by his son, Charles, in whose ability and integrity he has the utmost confidence, according to that son's judgment. This is the rational conclusion from

the language of the will. The sale and distribution in the second sentence of the paragraph refer to the same thing as the division and distribution in the first. The division into two sentences is immaterial. The testator might have expressed his whole intention more briefly with a single breath, as it were, by saying, "I direct my estate to be divided among my children and my grandson in the proportion of four parts to my son, two parts to each daughter and one part to my grandson, my son to sell the property according to his judgment, and make the distribution." The will gives Charles a power of sale, with a discretion to be exercised reasonably as to the place, time, terms and manner of the sale. The direction to divide, in the first sentence, was not addressed to the executor and gave no power to the executor to sell. (*Gammon* v. *Gammon,* 153 Ill. 41; *Sartain* v. *Davis* 323 id. 269.) An executor has no estate in or power over the real estate of his testator except such as he derives from the will. It is well settled that where there is an express devise to a person named in a will there can be no power of sale in the executor by implication. Before an implication is raised there must be an absence of express devise and it can never be raised in opposition to a devise, but where a devise is made to a person in express words it may be limited by other language used in the will inconsistent with the devise.

The second sentence of the paragraph refers to the sale and distribution of the testator's estate after his death by directing that such sale and distribution be left to the judgment of his son, Charles. The time, terms and manner of such sale are not mentioned. They are left entirely to the judgment of Charles, and this expression is in reality an express declaration that the son shall have the power to sell the real and personal property of the testator, exercising his discretion as to the time, terms and manner of such sale and distribute the proceeds to the beneficiaries mentioned in the will.

The word "distribution" refers ordinarily to personal property. It is defined by Bouvier as "the division by order of the court having authority, among those entitled thereto, of the residue of the personal estate of·an intestate after payment of the debts and charges." This definition is followed by the statement: "The term sometimes denotes the division of a residue of both real and personal estate, and also the division of an estate according to the terms of a will." "It is, specifically, division of an intestate's estate according to law." (Anderson's Law Dict.) In this case the testator has mingled his estate, both real and personal, so as to produce a common fund, which he directs to be divided and distributed, using the word "distributed" in the first sentence, referring to his whole estate, both real and personal. The word "divided," in this sentence, did not require a sale of the real estate. In the usual course of administration of the personal assets of the estate they would be reduced to cash by sale or collection by the executor or distributed in kind, so that the personal estate would be divided and distributed by the executor to the beneficiaries named, according to their respective proportions fixed in the will. So far as the real estate was concerned, it might be divided by the beneficiaries by their voluntary act of exchanging deeds among themselves, or by their joining in a conveyance of the land and dividing the proceeds of the sale among themselves. However, since one of the beneficiaries was a minor and unable to make a conveyance of his interest neither of these methods could be used, but by a partition suit the land might be divided and the shares of each of the beneficiaries set off separately, or if that could not be done without manifest injury to the owners the land might all be sold and the money divided. This is the effect of the first sentence of paragraph 2 standing alone. This sentence must, however, be considered in connection with the second, which provides for a sale and distribution of the estate. The whole paragraph relates to

a single subject matter—the testator's estate. Both sentences refer to the same subject matter, which is the whole of the testator's estate. The second states that there shall be a sale of his estate, which shall be left entirely to the judgment of his son, thus expressly conferring on him a power of sale.

If a testator by his will simply directs his executor to sell real estate and apply the proceeds to certain specified purposes the executor will take a power, only, but if there is a devise to the executor to sell and apply the proceeds as directed he will take an estate in the land. (*West* v. *Fitz,* 109 Ill. 425; *Emmerson* v. *Merritt,* 249 id. 538; *Lambert* v. *Harvey,* 100 id. 338.) In the last case cited the testator directed that after the death of his wife all accounts, notes, bonds and judgments be collected, and all property, both real and personal and mixed, be sold, and, after paying the expenses of executing the will, $1000 be paid to his daughter Alma W. Kingsley, and the remainder of his entire estate given to his daughter Catharine S. Harvey, and if she should not be living, then to her daughter, Alma Harvey. It was held that the legal title to the testator's real estate passed to his heirs, his two daughters, and not to his executrix, since she had no duties to perform with respect to the realty, which could be performed only by one clothed with the legal title; that a mere power of sale was all that was necessary to carry into effect the objects of the will, and such power, only, was conferred.

A devise of real estate where the will directs the real estate to be sold and the proceeds to be distributed is regarded as a gift of money and not of land, and the legal title to the land, whether left by the will to descend to the heirs by operation of law or vested in a trustee, is held in trust for the purposes specified in the will; and it makes no difference in this respect if the legal title descends to the legatees, to whom the bequest is to be paid in money when the land is sold. (*Baker* v. *Copenbarger,* 15 Ill. 103;

*Buckner* v. *Carr, supra.*) This is the doctrine of equitable conversion, under which in this case the beneficiaries in the will took by virtue of it no interest in the title, though the legal title descended to them in trust for the purposes of the will, and the executor took no title under the will but only a power of sale.

Where power is granted and the duty imposed on an executor to sell and convey real estate and distribute the proceeds to legatees a trust is created. (*Greenwood* v. *Greenwood,* 178 Ill. 387.) Such a trust is an active and not a dry trust, which the trustee may be compelled to execute. (*Buckner* v. *Carr, supra; Metsker* v. *Metsker,* 320 Ill. 547; *Sartain* v. *Davis, supra.*) A devise of real estate to be sold and the proceeds divided creates an equitable conversion of the real estate into personal property, and a bill for partition by one of the beneficiaries will not lie. *Burbach* v. *Burbach,* 217 Ill. 547; *Buckner* v. *Carr, supra; Metsker* v. *Metsker, supra; Sartain* v. *Davis, supra.*

The complainant has no interest in the land which can be made the basis of a suit for partition. The court properly sustained the demurrer to the bill, and its decree is affirmed. *Decree affirmed.*